CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

4/27/2023

LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
 DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES, | CASE NO. 6:19-cr-00021 |
| v. | |
| ERIC JOSEPH GRAVETTE, | MEMORANDUM OPINION |
| *Defendant.* | JUDGE NORMAN K. MOON |

Petitioner Eric Joseph Gravette, a federal inmate proceeding *pro se*, has moved to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, challenging his 262-month sentence following a guilty plea. Gravette claims he is innocent of the offenses to which he pled guilty and that he had ineffective assistance of counsel. The Government has filed a motion to dismiss, and Gravette has responded. The Court finds that Gravette's appeal waiver in his plea agreement bars his actual innocence claim and that his claims of ineffective assistance of counsel fail to meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 669 (1984). The Court will thus grant the Government's motion and dismiss Gravette's § 2255 motion. Gravette has also filed motions for an evidentiary hearing, for summary judgment, and for the return of the collected $400.00 special assessment fee. For the following reasons, the Court will deny these motions.

## Background

On June 24, 2018, a Lynchburg police officer responded to "a possible DUI/Suspicious vehicle" at the "Steak N Shake." Dkt. 58-1 at 1. The officer learned that the vehicle's license plates had been reported stolen, and upon arrival, he saw the vehicle driving out of the parking

1

lot in the wrong direction. *Id.* He activated his emergency equipment to initiate a traffic stop, which resulted in a brief pursuit of the vehicle that ended when the vehicle crashed down an embankment. *Id.* The driver and the passenger fled on foot. *Id.* The officer observed a Smith & Wesson 9-millimeter caliber pistol just outside the vehicle. *Id.* Inside the vehicle, the officer found fourteen knotted plastic bags containing a crystalline substance, which were later confirmed to contain 255 grams of mixture and substance containing a detectable amount of methamphetamine. *Id.* at 2. Law enforcement also found 132 grams of cocaine, 304 grams of marijuana, and an inoperable Raved Arms .25 caliber pistol inside the vehicle. *Id.* The Government later confirmed by forensic evidence that Gravette was the driver of this vehicle. *Id.* at 1.

Further investigation revealed that, beginning in September 2017 until August 10, 2018, Gravette, Allison Wood,[1] and others "conspired to distribute 500 grams or more of methamphetamine." *Id.* at 2. Wood estimated that "Gravette distributed approximately 14 ounces of methamphetamine per week over a period of two months." *Id.* A supplier for Gravette stated that "he provided Gravette 8 ounces of methamphetamine a week for two months prior to Gravette's arrest on state charges in August 2018" and estimated that "he sold Gravette at least one kilogram of methamphetamine during their dealings." *Id.*

On October 1, 2019, Gravette was charged by a federal grand jury in a ten-count indictment. Dkt. 3. He was charged with one count of conspiracy to distribute 500 grams or more of methamphetamine, four counts of possessing narcotics with the intent to distribute, two counts

---

[1] Gravette's co-Defendant Wood pled guilty on June 30, 2020. Dkts. 46–48. On March 24, 2021, she was sentenced to a term of imprisonment of 108 months. Dkt. 102.

of possessing a firearm in furtherance of a drug trafficking crime, and three counts of possessing a firearm as a convicted felon. *Id.*

On September 28, 2020, Gravette pled guilty to four counts in the indictment: (1) conspiracy to possess with the intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A); (2) possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B); (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (4) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Dkt. 55–58. He initialed every page of the written plea agreement and signed it. Dkt. 56. In the agreement, he acknowledged that he had "consulted with [his] attorney and fully [understood] his rights" and that he had "read [the] plea agreement and carefully reviewed every part of it with [his] attorney" and "voluntarily agreed to it." *Id.* at 15. He also acknowledged that he was "pleading guilty . . . because [he was] in fact guilty and because [he believe[d] it [was] in [his] best interest to do so and not because of any threats or promises." *Id.* at 2. He stipulated that "there [was] a sufficient factual basis to support each and every material factual allegation contained within the charging document(s) to which [he was] pleading guilty." *Id.* at 15. He also agreed to waive his right to appeal and collaterally attack the judgment unless such an attack was based on ineffective assistance of counsel.[2]

---

[2] The plea agreement provides in relevant part that:

I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel, and agree I will not file any document which seeks to disturb any such order, unless such filing is based on ineffective assistance of counsel. **I agree and understand that if I file any court document (except for an appeal based on an issue not otherwise waived in this agreement; an appeal based on an issue that cannot be waived, by law; or a collateral attack based on ineffective assistance of counsel)**

At the start of his guilty plea hearing, Gravette was sworn under oath. Dkt. 113 at 2. The Court then conducted a Rule 11 plea colloquy and found that Gravette was competent to plead guilty. *Id.* at 5. The Court asked Gravette if he had "ample time to consult [his] attorney," to which he responded "Yes, sir." *Id.* The Court also asked Gravette if he was "fully satisfied with the counsel representation and advice given to [him] in this case by [his] attorney," to which he responded, "Yes, sir." *Id.* at 6. During the hearing, Gravette affirmed that he read and understood the plea agreement prior to signing it. *Id.* at 15. The Court asked him, other than the plea agreement, if anyone had made him any promises, assurances, or attempted to force him to plead guilty, to which he responded "No, sir." *Id.* He also acknowledged that he was voluntarily waiving his right to appeal the guilty verdict and sentence and his right to collaterally attack the judgment. *Id.*

During the hearing, the Government delivered the factual basis for Gravette's plea by reading its factual proffer. *Id.* at 16–20. Gravette's counsel stated that "we would agree with the stipulation of the U.S. Attorney." *Id.* at 19.[3] The Court asked Gravette how he wished to plead to the charges. *Id.* at 20. He responded "Guilty." *Id.* The Court then found that Gravette was "fully competent and capable of entering an informed plea and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." *Id.*

---

**seeking to disturb, in any way, any order imposed in my case, such action shall constitute a failure to comply with a provision of this agreement.**

Dkt. 56 at 11 (emphasis in original).

[3] Defense counsel continued by stating that "[w]e had some argument regarding the firearms. However, if we had gone to trial and lost, then my client would have been facing at least a mandatory 25 on Count One alone, would not have qualified for any substantial assistance, so we decided it was better to plead to these counts." Dkt. 113 at 19.

At the sentencing hearing on March 16, 2021, the Court asked whether Gravette and his attorney had an opportunity to review the Presentence Investigation Report ("PSR"), to which Gravette's counsel responded "Yes, Judge, and we have filed some objections." Dkt. 127 at 4. The Court addressed those issues and calculated that Gravette's advisory guideline range was 322 to 387 months. *Id.* at 9. The Court also noted that it had considered letters submitted by Gravette and his mother. *Id.* at 9–10. The Court sentenced Gravette to 262 months of imprisonment. *Id.* at 18.

## Legal Standard

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Gravette bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. *Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965).

## Gravette's § 2255 Motion

A. **Effect of Appeal Waiver**

Throughout his § 2255 motion, Gravette claims that he is "innocent of every count of the indictment." Dkt. 116 at 4; *see* Dkt. 116-1 at 2. The Court, however, finds that he waived his right to collaterally attack his conviction and sentence by asserting he is innocent.

A "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Absent extraordinary circumstances, "allegations in a § 2255

5

motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *Id.* at 221 (internal quotation marks omitted); *see also Blackledge v. Allison*, 431 U.S. 63, 76 (1977) (noting that statements made during a plea hearing "constitute a formidable barrier in any subsequent collateral proceedings").

However, the Fourth Circuit has held that an appeal waiver is invalid if enforcing it "would result in a 'miscarriage of justice.'" *United States v. McKinney*, 60 F.4th 188, 192 (4th Cir. 2023); *see also United States v. Adams*, 814 F.3d 178, 182 (4th Cir. 2016); *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005). To show a miscarriage of justice, a defendant must make out a "cognizable claim of actual innocence." *Adams*, 814 F.3d at 182. For example, in *McKinney*, the defendant filed a § 2255 motion to vacate his § 924(c) conviction and sentence, claiming that he was actually innocent of his § 924(c) conviction because it had been predicated on Hobbs Act conspiracy. 60 F.4th at 190–91. The Fourth Circuit found that he made a cognizable claim of innocence and that his appeal waiver did not bar his claim of relief because Hobbs Act conspiracy no longer qualified as a predicate offense for a § 924(c) conviction. *Id.* at 192–93.

Here, Gravette waived his right to collaterally attack his conviction and sentence, except as to matters involving ineffective assistance of counsel, in his plea agreement. Dkt. 56 at 11; Dkt. 113 at 15. During the hearing, Gravette affirmed that he read and understood the plea agreement prior to signing it and that nobody attempted to force him to plead guilty or had made him any promises or assurances other than the plea agreement. *Id.* at 15. Gravette also acknowledged that he was voluntarily waiving his right to appeal the guilty verdict and sentence and his right to collaterally attack the judgment. *Id.* After conducting the Rule 11 plea colloquy,

6

the Court found that his plea was competent, knowing, and voluntary. Dkt. 113 at 5, 20. Thus, Gravette knowingly and voluntarily waived his right to attack his conviction and sentence collaterally, except as to claims of ineffective assistance of counsel.

In addition, Gravette has not made out a cognizable claim of innocence for the appeal waiver to be found invalid. *See Adams*, 814 F.3d at 182; *McKinney*, 60 F.4th at 192–93. During his guilty plea hearing, he pled guilty to the offenses that he now tries to claim he did not commit. Dkt. 113 at 19. Gravette has failed to show extraordinary circumstances for this Court to discount the truth of his sworn statements during the guilty plea hearing. *See Lemaster*, 403 F.3d at 221–22 (noting "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established"). Accordingly, pursuant to his plea agreement, Gravette waived his right to collaterally attack his conviction and sentence by asserting he is innocent.

B. **Gravette's Ineffective Assistance of Counsel Claims**

In his § 2255 motion, Gravette also asserts several claims of ineffective assistance of counsel. *See United States v. Baptiste,* 596 F.3d 214, 216 n.1 (4th Cir. 2010) (noting a § 2255 motion is a proper avenue for an ineffective assistance of counsel claim). To establish a viable claim of ineffective assistance of counsel, Gravette must satisfy a two-prong analysis: (1) show that counsel's performance fell below an objective standard of reasonableness; and (2) establish prejudice due to counsel's alleged deficient performance. *Strickland*, 466 U.S. at 687.

When considering the reasonableness prong, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *Gray v. Branker,* 529 F.3d 220, 228–29 (4th Cir. 2008). Counsel's performance is judged "on the

facts of the particular case" and assessed "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689–90. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To satisfy the prejudice prong, Gravette must show that there is a reasonable probability that, but for his counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* at 694. Specifically, Gravette, who has pled guilty, must demonstrate that, but for his counsel's alleged error, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If Gravette fails to show one prong of the *Strickland* test, the Court does not need to determine whether he has satisfied the other prong. *Id.* at 697.

Notably, the *Strickland* Court emphasized that defense counsel must be given "wide latitude" in making tactical decisions. *Id.* at 689. As such, an attorney's duty to consult with his client does not require him to obtain consent for "every tactical decision." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). For instance, counsel can independently make decisions on "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (internal quotation marks omitted). Counsel's tactical decisions will be held ineffective "only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).

### a. *Motion to Continue*

Gravette first claims that his counsel's decision to file a motion to continue trial without his consent amounted to ineffective assistance of counsel. Dkt. 116 at 5; Dkt. 116-1 at 15; Dkt. 116-2 at 9–10; Dkt. 116-3 at 8. On November 27, 2019, Gravette's counsel moved to continue trial from December 19, 2019 to May 14, 2020 to allow him "more time to obtain discovery." Dkt. 38.

"[A] motion for continuance to prepare for trial is a classic example of a strategic decision by counsel that the court must presume reasonable." *United States v. Nichols*, No. 7:07-cr-6, 2015 WL 1000727, at *11 (W.D. Va. Mar. 5, 2015) (citing *Strickland*, 466 U.S. at 689–90); *see Stewart v. Nix*, 972 F.2d 967, 970 (8th Cir. 1992) ("Generally, motions for a continuance pertain to trial tactics or conduct of the trial process and are largely left to trial counsel's discretion."). Gravette has failed to provide any evidence that demonstrates "no competent attorney would have" moved to continue trial or that he was prejudiced because of his counsel's decision to move trial. *See Adams*, 709 F.2d at 1445. Thus, he fails to show ineffective assistance under *Strickland* for this claim.

### b. *Motion to Suppress*

Next, Gravette claims that his counsel was ineffective because he failed to move to suppress items law enforcement seized and searched on June 24, 2018 and August 10, 2018. Dkt. 116-1 at 7, 10. On June 24, 2018, law enforcement discovered narcotics and a firearm inside the vehicle abandoned by Gravette and his passenger. Dkt. 58-1 at 1–2. Gravette alleges that his counsel refused his request "to file a motion to suppress contraband seized from the abandoned vehicle." Dkt. 116-1 at 7. On August 10, 2018, law enforcement executed a warrant to arrest

9

Gravette at a boarding home in Lynchburg where he was staying with about 5 or 6 other tenants at that time. Dkt. 29; Dkt. 135-3. Following his arrest, law enforcement obtained a warrant to search the premises. Dkt. 135-3 at 1. Law enforcement discovered a Mossberg Maverick 12-gauge shotgun in the basement where Gravette had been observed[4] and 137 grams of methamphetamine. *Id.* at 1–2.

The Fourth Amendment of the U.S Constitution requires that searches and seizures be reasonable. *Riley v. California*, 573 U.S. 373, 381 (2014). However, a counsel's "failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (emphasis in original). The decision of whether to file a motion to suppress is a tactical decision because "trial counsel has superior experience with the criminal process and detailed, objective knowledge of the strengths and weaknesses of the defendant's case. Trial counsel also is in a far better position to assess the meritoriousness of a pre-trial motion to suppress." *Morris v. United States*, No. 2:06-cv-00938, 2008 WL 4763223, at *4 (S.D.W. Va. Oct. 27, 2008) (citing *Sexton,* 163 F.3d at 885) (cleaned up).

Here, Gravette's counsel did not act "patently unreasonable" by failing to file motions to suppress the items seized and searched. *Adams*, 709 F.2d at 1445. Gravette's counsel appears to have reasonably made a tactical decision to not file motions to suppress and instead focused on plea negotiations with the Government. According to Gravette's counsel's affidavit, Gravette told his counsel after reviewing the discovery that he "did not wish to discuss the evidence but wanted to enter into plea discussions" and did not request any pre-trial motions. Dkt. 135-7 at 2.

---

[4] Gravette claims that the Mossberg shotgun belonged to the house's owner. Dkt. 116-1 at 9. The Government, however, dropped the firearm charge relating to the Mossberg shotgun. Dkt. 135-7 at 2.

Even if Gravette's counsel had filed the motions to suppress, they likely would have been unsuccessful. The search of the boarding home in August 2018 was a reasonable Fourth Amendment search because law enforcement acted pursuant to a search warrant, and Gravette provides no argument or evidence to show that the warrant was invalid. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) (noting the reasonableness requirement of the Fourth Amendment generally requires law enforcement to obtain a warrant before a search). Gravette also likely lacked standing to challenge the search and seizure of the abandoned vehicle in June 2018. *United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir. 2005) ("When a person voluntarily abandons his privacy interest in property, his subjective expectation of privacy becomes unreasonable, and he is precluded from seeking to suppress evidence seized from it.").[5] Accordingly, Gravette fails to demonstrate that if his counsel had filed motions to suppress, there is a reasonable probability that he would have rejected the plea agreement. *Hill*, 474 U.S. at 59 (1985). He thus fails to satisfy the *Strickland* test for this claim.

c. ***Motions Related to Selective Prosecution***

Gravette also claims that his counsel was ineffective by failing to file motions related to selective prosecution. Dkt. 116-1 at 13, 21; 116-2 at 8–9. He claims that his counsel failed to "draw[] the Count's attention to unindicted co-conspirators," such as Quentin Jones or others, who were similarly situated in criminal culpability but who went unprosecuted. Dkt. 116-1 at 13.

The Executive Branch has "broad discretion" to decide who will face prosecution. *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *see also Bordenkircher v. Hayes*, 434 U.S. 357,

---

[5] Further supporting that the search of the vehicle was reasonable, the Government claims it had a search warrant for a subsequent search of the vehicle. Dkt. 135 at 15.

11

364 (1978) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). To show a selective prosecution claim, "a defendant must demonstrate that the prosecution 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (quoting *Wayte v. United States,* 470 U.S. 598, 608 (1985)). "[T]o overcome the presumption that a government prosecutor has acted lawfully and without discrimination—a particularly demanding standard," a defendant must provide "clear evidence" to establish a selective prosecution claim. *United States v. Passaro*, 577 F.3d 207, 219 (4th Cir. 2009) (internal quotation marks omitted).

Here, Gravette does not provide any evidence or argument that the Government's decision not to charge others similarly situated to him was motivated by a discriminatory purpose or had a discriminatory effect. Thus, Gravette fails to show that his counsel acted unreasonably when he did not file a selective prosecution claim. *See Strickland*, 466 U.S. at 689–90.

### d. *Failure to Make Objections*

Gravette further claims that his counsel was ineffective by failing to object to: (1) the Government's representations of material facts during the guilty plea hearing and the legal sufficiency of the evidence used to convict him, Dkt. 116-2 at 6, 13, 24–31; (2) the entry of the Due Process Protections Act Order, Dkt. 116-2 at 12–13; (3) the Court's unwarranted sentencing disparity between himself and his co-Defendant Wood; (4) the Government's breach of contract based upon co-Defendant Wood's October 29, 2020 factual proffer, Dkt. 116-1 at 34–37; Dkt.

116-2 at 15; and (5) the Government's constructive amendment to the indictment. Dkt. 116-2 at 12–13.

  First, Gravette's claims that his counsel failed to object to the Government's factual support for Gravette's conviction and the Due Process Act Order lack merit. In the plea agreement Gravette signed, he stipulated that "there [was] a sufficient factual basis to support each and every material factual allegation contained within the charging document(s) to which [he was] pleading guilty." Dkt. 56 at 15. Gravette's counsel also stated during the guilty plea hearing that "we would agree with the [factual proffer] of the U.S. Attorney." Dkt. 113 at 19. And notably, Gravette did not object or raise any concerns to the Government's factual proffer during the guilty plea hearing. *See id.* Additionally, the Due Process Act Order in this case ordered "that the Government adhere to its disclosure obligations set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny." Dkt. 90. The Court can find no reason for why a reasonable defense counsel would object to a Due Process Act Order. Such orders benefit and protect a defendant's interests. Gravette thus fails to show that his counsel fell below "the wide range of reasonable professional assistance" when he did not object to the Government's factual support for Gravette's conviction and the Due Process Act Order. *See Strickland*, 466 U.S. at 689.

  Second, Gravette's counsel did not act unreasonably when he failed to object to the sentencing disparity between Gravette's 262-term of imprisonment and his co-Defendant Wood's 108-term of imprisonment. Gravette argues that Wood was similarly situated to him and thus his counsel should have objected to the disparity between their sentences. Dkt. 116-1 at 34; Dkt. 102. The Court disagrees and finds that Gravette and Wood were not similarly situated for sentencing purposes. While Gravette and Wood took part in the same drug conspiracy, Wood

13

only pled guilty to one count of conspiracy to possess with the intent to distribute 500 grams or more of methamphetamine while Gravette pled guilty to four counts, including conspiracy to possess with the intent to distribute 500 grams or more of methamphetamine, possession with intent to distribute 50 grams or more of methamphetamine, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon. *Compare* Dkt. 48 *with* Dkt. 55–58. In addition, Wood had a criminal history category of V while Gravette had a criminal history category of VI. Dkt. 96 at 18; Dkt. 89 at 19.

    Third, Gravette fails to properly articulate how the Government breached his plea agreement, and the Court is also unable to find a basis within the record to support his claim. As such, Gravette fails to establish a viable claim of ineffective assistance of counsel for his allegation that the Government breached his plea agreement. *See Strickland*, 466 U.S. at 687.

    Fourth, Gravette's constructive amendment claim lacks legal merit. A constructive amendment occurs when the Government, through evidence or argument, "broadens the bases for conviction beyond those charged in the indictment." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). This results in a defendant being "convicted of a crime other than that charged in the indictment." *Id.* (internal quotation marks omitted). A constructive amendment violates the Fifth Amendment right to be indicted by a grand jury. *Id.* Here, Gravette pled guilty and was sentenced upon the same indictment returned by the grand jury. The Government did not modify the counts in the indictment.

    For these reasons, Gravette fails to show that his counsel fell below an objective standard of reasonableness when he did not to object to the claims raised by Gravette in his petition. *See Strickland*, 466 U.S. at 689–90.

### e. *Limited Review of Discovery and Investigation of Possible Defenses*

Gravette claims that his counsel was ineffective for conducting a limited review of the discovery. Dkt. 116-1 at 4, 11–12, 15, 17, 23; Dkt. 116-3 at 8–9. He specifically claims that his counsel did not conduct any investigation regarding possible defenses, including failing to (1) request scientific testing of items seized on June 24, 2018 and August 10, 2018, Dkt. 116-1 at 9, 16-18; Dkt. 116-3 at 9; (2) request the production of evidence impeaching or discrediting potential government witnesses, Dkt. 116-3 at 9; or (3) investigate any exculpatory evidence. Dkt. 116-1 at 16–17.

However, Gravette's assertions in his petition are contradicted by the record. During the guilty plea hearing, the Court asked if Gravette had "ample time to consult [his] attorney," to which he responded "Yes, sir." Dkt. 113 at 5. Gravette also affirmed that he was "fully satisfied with the counsel representation and advice given to [him] in this case by [his] attorney." *Id.* at 6. He acknowledged that he understood that he had a right to a trial by jury and that at trial he would be presumed to be innocent. *Id.* He affirmed that no one had attempted to force him to plead guilty. *Id.* at 15. Because his current allegations in his motion contradict those he made in the plea colloquy, they lack merit. *See Lemaster*, 403 F.3d at 221 (holding that absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false").

In addition, contrary to Gravette's claims, his counsel did request the disclosure of impeachment evidence and any exculpatory evidence when he signed and requested the entry of the Joint Discovery and Inspection Order. Dkt. 34. The Order, for example, ordered that Gravette was permitted to inspect, copy, and/or photograph any evidence in custody and control of the

Government that was material to Gravette's defense, intended to be used by the Government in its case-in-chief at trial, or was obtained or belonged to Gravette. *Id.* at 2. It also ordered the Government to provide Gravette any exculpatory evidence, which would include impeachment evidence of potential government witnesses. *Id.* at 3. Moreover, Gravette fails to demonstrate that his counsel's decision not to conduct scientific testing of the items seized was objectively unreasonable, especially considering that the Government had already performed numerous tests on the items seized during its investigation. *See* Dkts. 135-2, 135-4; *Strickland*, 466 U.S. at 689–90.

### f. Sentencing Errors

Gravette lastly claims that his counsel was ineffective in preparing for and arguing during his sentencing hearing. He claims that his counsel failed to review the PSR with him prior to the hearing and that he failed to investigate or contact potential character witnesses to testify on his behalf at the hearing. Dkt. 116-1 at 14–15, 32–33, 37–38; Dkt. 116-2 at 13–14, 16; Dkt. 116-3 at 11. He also asserts that his counsel failed to present mitigating evidence, such as his substance abuse history and difficult childhood, that could have reduced his sentence. *See, e.g.*, Dkt. 116-1 at 33–34.

Gravette's allegation that his counsel failed to review the PSR with him lacks merit. During the sentencing hearing, the Court asked whether Gravette and his attorney had an opportunity to review the PSR, to which Gravette's counsel replied "Yes, Judge, and we have filed some objections." Dkt. 127 at 4. Gravette had every opportunity to dispute this statement during the hearing but did not do so. *See id.* For instance, during his allocution, Gravette stated that he was there "to accept responsibility for [his] actions" and to apologize "for the things [he

had] done," but he did not raise any concerns about his counsel allegedly failing to review the PSR with him. *Id.* at 18. And in his § 2255 motion, Gravette provides no reason for why he did not object to this during the sentencing hearing. *See* Dkt. 116. Thus, the statements made during the sentencing hearing belie Gravette's allegation, and as such, he fails to establish a viable claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687.

As to the failure to investigate and present mitigating evidence, "[i]t is well settled that defense counsel must conduct a reasonable investigation into mitigating evidence to be presented during the sentencing phase, and that failure to present mitigating evidence cannot be justified as a tactical decision unless the duty to investigate has been fulfilled." *United States v. Taylor*, No. 3:13-cr-87, 2018 WL 3130417, at *3 (E.D. Va. June 26, 2018) (internal quotation marks omitted) (cleaned up). The "principal concern is not whether counsel should have presented a mitigation case, but whether the investigation supporting their decision not to introduce mitigating evidence of [the petitioner's] background was *itself reasonable*." *Wiggins v. Smith*, 539 U.S. 510, 511 (2003) (emphasis in original). Notably, "counsel does not have to investigate every possible avenue of mitigation." *Taylor*, 2018 WL 3130417, at *3.

The record reflects that Gravette's counsel conducted reasonable investigation prior to the sentencing hearing. For instance, he filed objections to the initial PSR and a sentencing memorandum on behalf of Gravette and provided argument on his objections during the sentencing hearing. Dkts. 74, 75; Dkt. 127 at 4–5. Moreover, Gravette's allegation that his counsel failed to present evidence about his substance abuse problem is not supported by the record. In the sentencing memorandum filed prior to the sentencing hearing, his counsel specifically stated that Gravette "ha[d] an extremely serious substance abuse problem which led to his acting as a user/dealer for many years." Dkt. 75 at 2. And while Gravette asserts that his

17

counsel failed to investigate potential character witnesses, his counsel in his affidavit asserts that Gravette "never identified any witnesses for sentencing." Dkt. 135-7 at 2.

Even if Gravette could show that his counsel acted unreasonably, he has failed to show how he was prejudiced by his counsel's alleged error. *See Strickland*, 466 U.S. at 694. During the sentencing hearing, the Court stated that it had considered Gravette's letter, which described his history with substance abuse. Dkt. 70; Dkt. 127 at 10. The Court also explicitly accounted for Gravette's history of substance abuse when imposing his sentence. *See* Dkt. 127 at 17, 21 (The Court finding significant "defendant's serious largely untreated drug addiction" in imposing sentence and noting that "[g]iven the defendant's history of substance abuse, the defendant shall comply with the following special conditions" of supervised release). Thus, Gravette was not prejudiced by his counsel's decision not to present additional evidence of his history of substance abuse.

Gravette also fails to demonstrate any resulting prejudice from his counsel's failure to present evidence about his mother abandoning him or how additional evidence about his childhood trauma would have resulted in a sentence reduction. According to the PSR, Gravette reported that "he ha[d] minimal contact with his mother, who left him in the care of his father, at age one" and that his childhood "was absent of abuse" and "denied any abuse by his father or between his father or between his father and step-mother." Dkt. 89 ¶¶ 61–62. The Court reviewed the PSR, including the portion discussing his personal and family data, prior to the sentencing hearing and considered it when imposing his sentence. *See* Dkt. 127 at 4.

For these reasons, Gravette fails to demonstrate both that his counsel was constitutionally deficient in his performance during sentencing and that he was prejudiced by his counsel's failure to introduce mitigating evidence. *See Strickland*, 466 U.S. at 687.

### **Gravette's Additional Motions**

In addition to his § 2255 motion, Gravette, proceeding *pro se*, has filed three motions. The Court proceeds by addressing each.

Gravette first moves for an evidentiary hearing. Dkt. 143. An evidentiary hearing must be granted with a § 2255 petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The determination of whether to grant an evidentiary hearing "is best left to the common sense and sound discretion of the district judges." *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970). An evidentiary hearing is warranted when "the factual allegations relate primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light and where the ultimate resolution rests on a credibility determination." *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004) (internal quotation marks and citation omitted) (cleaned up). Here, Gravette's claims within his petition do not warrant an evidentiary hearing, because as discussed above, "the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b). Thus, his motion will be denied. Dkt. 143.

Gravette also moves for summary judgment, emphasizing that his § 2255 motion is still pending. Dkt. 159. This motion will be denied as moot because the Court has now ruled on his § 2255 motion.

Lastly, Gravette asks the Court to order the return of the collected $400.00 special assessment fee and to allow him to use an installment plan to pay the fee. Dkt. 151. As part of his sentence, the Court imposed a $400.00 special assessment fee and ordered that it be paid immediately in one lump sum, which Gravette paid. Dkt. 94 at 7–8. In accordance with its sentencing judgment, the Court will deny his motion.

## Conclusion

For the above reasons, the Government's motion to dismiss, Dkt. 135, will be granted and Gravette's motion pursuant to 28 U.S.C. § 2255, Dkt. 116, will be dismissed. The Court will deny Gravette's motions for an evidentiary hearing, Dkt. 143, for summary judgment, Dkt. 159, and for the return of the collected $400.00 special assessment fee, Dkt. 151. An accompanying Order will be issued.

The Clerk of Court is directed to send this Memorandum Opinion to Gravette and all counsel of record.

Entered this 27th day of April, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE